39841. OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA v. TEMPLETON, Executrix.

DECIDED JANUARY 24, 1963—
REHEARING DENIED FEBRUARY 8, 1963.

*Fulcher, Fulcher, Hagler & Harper, J. Walker Harper,* for plaintiff in error.

*Jeff D. Curry, Randall Evans, Jr.,* contra.

NICHOLS, Presiding Judge. 1. The plaintiff's petition alleged that the policy of insurance was issued on February 15, 1954, and that on December 3, 1954, the insured assigned the policy to the plaintiff. There was no allegation that the policy was in full force and effect or a direct allegation that the policy had been delivered to the insured. In support of its oral motion to dismiss the petition the defendant contends that in the absence of such allegations or in the absense of an allegation that the policy was in the possession of the plaintiff the petition was fatally defective.

The petition alleged that the policy was issued and some ten months later assigned by the insured to the plaintiff. While the word "issued" may be subject to two or more interpretations when used with reference to an insurance policy and in the absence of any further allegation (construing the petition most strongly against the pleader), merely as an allegation that the policy was written and not delivered so as to convert the insured from an applicant into an insured, yet when the allegation that the policy was assigned to the plaintiff at a date after the date it was allegedly issued is considered, it must be construed as alleging that the policy was "issued" in the sense that the possession or right of possession was in the insured. See Words and Phrases, "Issue." While the petition is construed against the pleader yet it must be accepted as true. And once the policy was in force the pleader is not required to show that it had not been canceled for nonpayment of premiums, etc., for such is a condition subsequent and a matter of defense. See *Turner v. Masonic Relief Assn.,* 52 Ga. App. 374 (1) (183 SE 350); *Masonic Relief Assn. v. Hicks,* 47 Ga. App. 499 (171 SE 215); *Norman v. Sovereign Camp W. O. W.,* 61 Ga. App. 457 (1) (6 SE2d 157). Nor will it be presumed that the policy contained a

provision for forfeiture. See *Lankford v. State Life Ins. Co.,* 57 Ga. App. 626, 635 (195 SE 907); *National Life &c. Ins. Co. v. Lockett,* 65 Ga. App. 866 (16 SE2d 776). The trial court did not err in overruling the defendant's oral motion to dismiss the plaintiff's petition.

2. There was no contention, either in the defendant's pleadings or evidence, that all necessary premiums to keep the policy in effect had not been paid, and the defendant admitted in its answer that the policy was issued, that the plaintiff was the assignee in such policy, that the face value of the policy was the amount alleged, that the plaintiff had made all necessary proofs of loss, etc., and that more than sixty days had expired since demand for payment, and for further answer alleged that the plaintiff and the insured had surrendered the policy before the death of the assured for its cash value and that the cash value was all that it owed the plaintiff. As a part of its answer the defendant pleaded the following excerpt from the policy:

"*General Provisions.*

"Payment of cash loans and surrender values—The company at its option may defer cash payment of any loan or surrender value for the period permitted by law, but not to exceed six months, after application therefor is received by the company at its Home Office."

"Table of non-forfeiture values-per $1,000 or face amount. On the assumption that there is no indebtedness to the company on account of this policy.

| *Full years prem. paid* | Age at issue 40. |
|:---:|:---:|
| | *Cash or loan values* |
| 5 | $76 |
| 6 | $97 |

"Provisions for Non-forfeiture. While this policy is in full force, and after premiums have been paid to or beyond the end of the policy year for which a cash value is first shown in the particular table on non-forfeiture values, corresponding to the age of the insured shown on the first page of this policy (herein called 'the table'), one of the following options shall be available:

(1) Cash. To surrender this policy to the company for the net cash value—which is the cash value as shown in column 1 of the table less any indebtedness to the company hereon."

Assuming, as contended by the defendant that the plaintiff and the insured had executed an application to surrender the policy for its cash value, and had forwarded the same to the defendant before the death of the insured, under the express provisions of the policy (as plead by the defendant), the insurance company had an option of accepting the application to surrender the policy immediately or to defer payment of such cash surrender value for a period of up to six months. The undisputed evidence, including evidence which the insurer contends should have been admitted over the plaintiff's objections, shows that the option given the insurer was not exercised until after the death of the insured. While it is true that the insurer, under the terms of the policy (as shown by the pleadings) was required to pay the cash surrender value six months after the application was received at its home office, yet until the application was accepted and the cash surrender value paid, the policy was still in force and effect, and where the insured died two days before the insurer mailed its acceptance of the application to surrender the policy, the policy was still in effect at the time of the death of the insured, and the verdict for the face amount of the policy was demanded by the evidence, there being no evidence of any acceptance by the insurer prior to the insured's death. Accordingly, the trial court did not err in overruling the defendant's motion for judgment non obstante veredicto or the general grounds of its motion for new trial. *Interstate Life &c. Co. v. Jackson*, 71 Ga. App. 85 (30 SE2d 208). This case differs from *DeLaPerriere v. American Home Assurance Co.*, 106 Ga. App. 516 (127 SE2d 478), in that there the insured had the sole option to cancel the policies whereas the insurer was given an option as to when it would accept the cancellation after the insured exercised his option.

3. Special grounds 4, 5, 6, 7 and 8 which deal with the exclusion of evidence, which if admitted would not have author-

ized a verdict for the defendant, show no harmful error, nor do grounds 9, 10, 11, 12, 13 or 15 which deal with the court's charge show any harmful error, and special ground 14 has been expressly abandoned. The rulings which occurred prior to the trial, and on which error is assigned in the bill of exceptions, would not, if rendered as contended for by the defendant, have authorized a verdict for the defendant, and show no harmful error.

4. The last remaining ground of the motion for new trial complains of the verdict awarding attorney's fees. The verdict which expressly stated that no penalty was found against the defendant nullified the award of attorney's fees. See *Union Central Life Ins. Co. v. Cofer*, 103 Ga. App. 355, 363 (119 SE2d 281). Accordingly, since the attorney's fees are not authorized, in the absence of the jury finding bad faith on the part of the insurer, the judgment of the trial court overruling the defendant's motion for new trial will be affirmed, provided that the part of the jury's verdict awarding $1,000 attorney's fees is written off by the plaintiff within 10 days from the date the remittitur of this court is filed in the trial court, otherwise the judgment overruling the defendant's motion for new trial is reversed.

*Judgment affirmed on condition. Frankum and Jordan, JJ., concur.*