Elizabeth SADTLER, Appellant,

v.

**JOHN HANCOCK MUTUAL LIFE INSUR-
ANCE COMPANY, Appellee.**

No. 5838.

District of Columbia Court of Appeals.

Argued Nov. 8, 1971.

Decided May 22, 1972.

Jacob Sheeskin, Washington, D. C., for appellant. Jay S. Weiss, Washington, D. C., also entered an appearance for appellant.

John Eris Powell, Washington, D. C., for appellee.

Before GALLAGHER, NEBEKER and REILLY, Associate Judges.

GALLAGHER, Associate Judge:

Appellant brought suit to recover the proceeds of a group life insurance policy obtained incident to the purchase of an automobile. After a nonjury trial, judgment was entered against appellant.

On April 24, 1968, appellant and her husband, Harry Sadtler, executed a conditional sales agreement with Sellers Sales & Service, Inc., a Chrysler dealer located in Maryland, for the purchase of a 1968 Chrysler at a cost of $4,816.44. In the conditional sales contract Mr. Sadtler agreed to participate in a group life insur-

ance policy which provided that if he died prior to completion of the car payments, John Hancock Mutual Life Insurance Company, appellee, would pay the balance of the debt owed by Mr. Sadtler to Chrysler Credit Corporation, the financier of the car and policyholder under the group plan.

Mr. Sadtler died of a heart attack after making only two payments under the contract. Subsequently, the insurance company refused to make payment under the policy on the basis that Mr. Sadtler had stated in the conditional sales agreement that he was in good health despite his knowledge that this was not the fact at the time of the transaction.

Though Mr. Sadtler was not given a copy of the master policy, a clause of the insurance provision in the conditional sales agreement required Mr. Sadtler to make a "Declaration of Good Health." The agreement signed by Mr. Sadtler contained the statement that:

> I, the Buyer proposed for life insurance, in order to induce John Hancock to effect such insurance, do hereby declare that to the best of my knowledge and belief I am now in good health.

It is uncontested that Mr. Sadtler was aware that he was not in good health when he signed this agreement as he had suffered from a heart condition since 1964, had been hospitalized for this several times, and had retired from his job due to this disability. Appellant relies upon her testimony that prior to entering the sales contract she and Mr. Sadtler informed the salesman of the nature of Mr. Sadtler's condition and, nevertheless, he was permitted to participate in the group insurance. In addition, the Sadtlers previously had filled out a purchaser's statement in which Mr. Sadtler was listed as disabled and retired, and, according to Mr. Sellers (the dealer), information contained in this statement as a matter of practice is transmitted by telephone to the Michigan headquarters of Chrysler Credit Corporation and credit for the purchase of the automobile is approved or disapproved at that time.

The trial court, denying recovery, found that Sellers Sales & Service, the salesman's employer, was not an agent of John Hancock but, rather, acted on behalf of Chrysler Credit Corporation. In addition, the court found that even if Sellers was an agent of the insurance company, appellant could not take advantage of a "known non-disclosure" to the insurance company of the true state of the decedent's health.

Essentially, we are presented at the outset with whether Sellers Sales and Chrysler Credit were acting as agents of the insurance company with respect to the insurance transaction. If an agency was established, this would leave whether knowledge of the health condition should be imputed to the insurance company.

Most of the decisions relating to group life policies deal with the employer type. This is doubtless because in recent years about 85 percent of the group insurance policies covered employer-employee groups. Note, Group Insurance: Agency Characterization of the Master Policyholder, 46 Wash.L.Rev. 377, 379 (1971).

There is a conflict of authority on whether an employer who is a policyholder of a *group insurance policy* acts as an agent of the insured employee or the insurer in connection with the contract of insurance and its implementation. Some courts have held that since the employee has little or no control over the actions of the employer, and as the latter collects and pays the premiums to the insurer, it is more equitable to consider the employer (policyholder) as an agent of the insurer. *E. g.,* Elfstrom v. New York Life Ins. Co., 67 Cal.2d 503, 63 Cal.Rptr. 35, 432 P.2d 731 (1967); Clauson v. Prudential Ins. Co., 195 F.Supp. 72 (D.Mass.), aff'd, 296 F.2d 76 (1st Cir. 1961); Piedmont Southern Life Ins. Co. v. Gunter, 108 Ga.App. 236, 132 S.E.2d 527 (1963). On the other hand, it apparently has been the majority rule that the policyholder (employer) is not the

agent of the insurer. *E. g.*, Boseman v. Connecticut General Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937); Aetna Life Ins. Co. v. Messier, 173 F. Supp. 90 (M.D.Pa.1959); Hanaieff v. Equitable Life Assur. Soc'y, 371 Pa. 560, 92 A. 2d 202 (1952); 1 J. Appleman, Insurance Law and Practice § 43 (1965). There is a growing body of thought, however, that the employer may be considered an agent of the insurer for some purposes if not necessarily for all purposes; and that the courts should look first to "the way group insurance is set up and operated, and of the relations and character of the parties [and then determine whether] the employer should be charged with the performance of certain functions on behalf of the insurance company," rather than resolve first the agency question and then decide whether the employer is charged with some functions on behalf of the insurer.[1] Note, Group Insurance Policies: The Employer/Insurance Agency Relationship, 1968 Duke L.J. 824; Note, Group Insurance: Agency Characterization of the Master Policyholder, *supra.*

However interesting the evolving law may be on the employer-employee group type of policy as it pertains to the agency question, the fact is we have here a different type of group policy, namely, the creditor-debtor type. Because of its nature, the court decisions on the employer group policies are not incisive on the agency question we have presented in this case. In the employer type, the employee stands in something resembling the shoes of a third-party beneficiary; and the employer has characteristics of a middleman between the employee and the insurer. In the usual creditor-debtor group life policy, upon the debtor's death, the creditor receives directly from the insurer a sum sufficient to extinguish the debt. Consequently, the creditor can be said realistically to be not only the policyholder, but the immediate beneficiary in each instance where the debtor dies before final payment on the debt.

As has been related, the conditional sales contract in this case was so executed as to effect credit life insurance on the debtor if he was otherwise qualified, the pertinent terms being that if he should die prior to payment in full on the car, the insurance company would pay the remaining balance due, the premium for the insurance being included in the installment payments. Pursuant to the operating policy of the insurance company, it receives no information that a particular person is insured until a claim is filed, at which point it reviews the conditional sales contract involved. Prior to that, the insurance company receives from Chrysler Credit only an identification number of the insured for accounting purposes and Chrysler Credit retains all other information, remitting to the insurer in a lump sum all premiums collected throughout the country on a monthly basis.

This brings us to the question of whether Chrysler Credit or Sellers Sales, or both, were acting as agents of the insurance company in relation to the life insurance transaction. We think they were not.

While it is evident that Sellers Sales and Chrysler Credit performed certain functions in relation to the procuring of, and administration of, the group policy as it pertained to the decedent the fact remains that Chrysler Credit was not only the policyholder but the immediate beneficiary of the policy since it would receive proceeds sufficient to pay the balance due on the car in the event of death before full payment. It appears to us that the role of beneficiary, by its nature, militates against an agency relationship between Chrysler Credit and the insurance company for pur-

1. Note, Group Insurance: Agency Characterization of the Master Policyholder, 46 Wash.L.Rev. 377, 407 (1971), quoting with approval Hanft, Group Life Insurance: Its Legal Aspects, 2 Law & Contemp.Prob. 70, 85 (1935).

poses of our problem.[2] Even though Chrysler Credit and Sellers Sales participated in the initiation and maintenance of the life insurance on the decedent this is not sufficient to establish an agency with the insurer in credit group policies. Because the policyholder makes the insurance available and pays and collects premiums, which result in lowered insurance costs, this does not empower the policyholder in credit group insurance to waive clauses, such as good health requirements, protecting the interests of the insurer.

More nearly in point than the cases involving an employer group policy is South Branch Valley Nat'l Bank v. Williams, 151 W.Va. 775, 155 S.E.2d 845 (1967), where a group credit policy was involved in relation to a bank loan. The court held the creditor (bank) was not an agent of the insurance company in providing for coverage on a loan to a person who was ineligible for such coverage.

The relationship of the policyholder (beneficiary) and the insurer with the potentially adversary interests on payment of claims which are inherent precludes an agency on the facts presented. Beyond this, we are by the terms of the group poli-

cy required to apply Michigan law to this case.[3] The trial court properly so found and we do not understand this to be in dispute. Significantly, Section 24.14416 of the Michigan Statutes, M.C.L.A. § 500.4416 provides that in group life insurance policies covering the lives of borrowers from a single financial institution such financial institution, "including subsidiaries or affiliated companies, shall not act as agent for such group life insurance transaction." Furthermore, the group policy contains a clause providing that "[t]he Policyholder shall in no event be considered the agent of the Company for any purpose under this Policy."

 We conclude that neither Chrysler Credit nor Sellers Sales was acting as an agent of the insurance company in relation to the debtor's life insurance.[4] Consequently, the decedent husband was bound by his erroneous declaration of good health in the conditional sales agreement and knowledge of the true state of his health may not be imputed to the insurer. This in turn disqualified him from the insurance coverage claimed by appellant.[5]

Affirmed.

---

2. We note that the group policy provides that "[f]ailure on the part of the Policyholder to record or to report to the Company the insurance of any Debtor who becomes eligible in accordance with the terms and conditions of this Policy shall not deprive such Debtor of his insurance. . . ." (Ex. 6, R. 33.) This provision is not sufficient to create an agency for our purposes in this case.

3. The Michigan cases cited by appellant on this point relate essentially to ordinary life insurance. They are not persuasive on the credit group policy question involved.

4. While the trial court did not make the finding precisely in these words, we read the finding as being necessarily to this effect. The finding is:

Sellers Sales & Service, Inc. was not an agent of the Defendant at the time of the transaction which is the subject matter of this litigation but rather was act-

ing on behalf of the policyholder, Chrysler Credit Corporation.

It strikes us that implicit in this finding is its conclusion that Chrysler Credit was not the agent of the insurance company. To read it otherwise would be to conclude the trial court ignored the central issue on this point because Sellers Sales could hardly have been an agent of the insurance company except through Chrysler Credit.

5. We agree with the trial court that Mr. Sadtler's statement in the conditional sales agreement that he was in good health despite his knowledge to the contrary presents an alternative basis on this record for denial of recovery even were Chrysler and Sellers considered agents of the insurance company. See Henson v. John Hancock Mut. Life Ins. Co., 261 Mich. 693, 247 N.W. 102 (1933). In this jurisdiction, see Jannenga v. Nationwide Life Ins. Co., 109 U.S.App.D.C. 385, 288 F.2d 169 (1961).